**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| THE VI CARNIVAL COMMITTEE, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-0019 |
| | ) | |
| JOSEPH BOSCHULTE, IAN TURNBULL, and | ) | |
| HALVOR HART, in their official capacities, | ) | |
| and Halvor Hart, in his individual | ) | |
| capacity, and THE GOVERNMENT OF THE | ) | |
| VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**APPEARANCES:**

**TERRI L. GRIFFITHS, ESQ.**
ST. THOMAS, V.I.
    *FOR PLAINTIFF VIRGIN ISLANDS CARNIVAL COMMITTEE.*

**VENETIA H. VELAZQUEZ, ESQ.**
**ARIEL MARIE SMITH-FRANCOIS, ESQ.**
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR DEFENDANTS JOSEPH BOSCHULTE, IAN TURNBULL, AND HALVOR HART, IN THEIR OFFICIAL
    CAPACITIES, AND THE GOVERNMENT OF THE VIRGIN ISLANDS.*

**HALVOR HART, III**
ST. THOMAS, U.S. VIRGIN ISLANDS
    *DEFENDANT HALVOR HART, III, IN HIS INDIVIDUAL CAPACITY*
    *PRO SE*

**MEMORANDUM OPINION**

**Molloy, Chief Judge.**

       **BEFORE THE COURT** is Defendants Joseph Boschulte, Ian Turnbull, and Halvor Hart,

in their official capacities, and the Government of the Virgin Island's (collectively

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 2 of 21

"Defendants") motion for judgment on the pleadings, filed October 10, 2023.[1] (ECF No. 164). Plaintiff Virgin Islands Carnival Committee ("VICC" or "Plaintiff") filed its opposition to Defendants' motion on November 20, 2023, (ECF No. 174), and Defendants filed their reply on December 8, 2023. (ECF No. 175.) For reasons discussed herein, the Court finds Judgment on the Pleadings in favor of Defendants resolving all federal claims. The Court declines to exercise supplemental jurisdiction as to Count Three of the Complaint.[2]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The parties are well familiar with the underlying facts of this case. The Court, therefore, will recite those facts only necessary for a disposition of the instant motion.

Originally organized as a local event by members within the St. Thomas community, the St. Thomas Carnival ("St. Thomas Carnival" or "the Carnival") blossomed into an internationally renowned cultural phenomenon. Unfortunately, the parties who once collaborated to expand and grow the event—VICC and the Government of the Virgin Islands (the "GVI")—parted ways in a not-too-amicable manner. This case arises from their ensuing dispute over rights related to producing the event.

The origins of St. Thomas Carnival date back to at least 1912; however, the event has not been consistently held since 1912. (*See* ECF No. 59). After a period of suspended interruption, former radio host Ron de Lugo (later a Virgin Islands Senator and United States Congressional Delegate) organized a group to revive the Carnival, forming a *de facto* carnival

---

[1]Defendants filed duplicate docket entries (ECF Nos. 162 and 165) on October 10, 2023, and October 11, 2023, respectively; ECF No. 162 was improperly labeled as a motion, and the Court denied it as MOOT. (*See* ECF No. 185. The Court considers ECF No. 165 as Defendants' memorandum in support of the motion filed at ECF No. 164.

[2]Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines supplemental jurisdiction over Count Three of the Complaint, which is a local claim as to Halvor Hart in his individual capacity. See *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 635 (2009) ("A federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. 28 U.S.C.S. § 1367(a), (c). A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

committee in 1952. Years later, in 1976, the committee incorporated as VICC—a 501(c) entity—"so that it could apply for federal grants in connection with the Territory's Bicentennial Celebration." (ECF No. 89 ¶11.) The non-profit corporation asserts that it is "the functional equivalent" to "the predecessor 1952-1976 organization*." Id.*

VICC continued to generate revenue through private sponsorships, vendors, and ticketing for numerous associated events. *Id.* at ¶13. Through the years, the committee also began receiving incrementally increasing funding from GVI in the form of grants. *Id.* In addition, GVI permitted VICC use of public spaces on the island without charge for Carnival activities held at those locations. *Id.* at ¶14.

In early December 2004, VICC applied to register the service marks "St. Thomas Carnival" and "Virgin Islands Carnival" with the United States Patent and Trademark Office ("USPTO"). (ECF No. 59 at 3, 4.) Both applications were initially denied due to the term "Carnival" qualifying as a generic term, and the phrases "St. Thomas" and "Virgin Islands" qualifying as geographical descriptors of a generic term. *Id*. Following an appeal, VICC acquired the service mark for "St. Thomas Carnival" on January 2, 2007, and acquired the service mark for "Virgin Islands Carnival" on February 6, 2007. *Id.* The applications were both based on the attestation that VICC had made substantially exclusive and continuous use of the marks. *Id.* VICC declared that it had exclusively used the name "Virgin Islands Carnival" since 1952 and had used the "St. Thomas Carnival" mark exclusively since 1992. The USPTO issued registration to VICC for both marks in 2007.[3] VICC asserts that it eventually gave its consent to GVI to use its trademarks for promoting and marketing the annual Carnival event.

### A. Act No. 8153

In 2019, the Virgin Islands Legislature signed Act No. 8153 into law. Act No. 8153 established the Division of Festivals under the Department of Tourism and tasked the newly founded division with duties related to the promotion and execution of the St. Thomas

---

[3]"On January 2, 2007, the USPTO published Registration No. 3,190,500 covering the mark 'ST. THOMAS CARNIVAL' issued to registration on January 2, 2007, and claims a first use date of 1992." (*See* ECF No. 89 at 6; ECF No. 89-2.) On February 6, 2007, "the USPTO published Registration No. 3,204,836 covering the mark 'VIRGIN ISLANDS CARNIVAL' issued to registration on February 6, 2007, and claims a first use date of 1952." *Id.*

Carnival, as well as similar celebrations on St. Croix and St. John. *See* 3 V.I.C. § 339a. The term "festival" is broadly defined as "carnivals, music festivals, film festivals, food festivals, and other organized community and cultural celebrations and social events." *Id.*

After the Legislature passed Act No. 8153, cooperation between VICC and GVI deteriorated in early 2020 to the point that VICC revoked consent for GVI's use of its registered trademarks.[4] Notwithstanding, the Division of Festivals began promoting an event scheduled for April 2022 and branded it as "St. Thomas Carnival V.I." and "St. Thomas Carnival Virgin Islands". The event was marketed as substantively identical to past Carnivals co-promoted with VICC, to the extent that GVI branded the 2022 Carnival as the "70th Anniversary" of Carnival in the Virgin Islands. (ECF No. 59 at 4.)

On March 28, 2022, VICC responded by filing its original complaint alleging trademark infringement pursuant to 15 U.S.C.S. § 1114(b) of the Lanham Act and an unconstitutional taking of its property. (ECF No. 1.) When it initially filed, VICC alleged only Count One, Count Two, and Count Four against the individual defendants and the V.I. Department of Tourism.[5] *Id.* On April 19, 2022, prior to defendants answering VICC's complaint, VICC filed a notice of voluntary dismissal, dismissing the Department of Tourism and an unfair competition count. (*See* ECF No. 39.) The Department of Tourism was dismissed from this action pursuant to Fed. R. Civ. P. 41(a)(i) without further Order of the Court. VICC attached a second "First Amended Verified Complaint" to its notice of voluntary dismissal, which removed the Department of Tourism and Count Three, leaving two causes of action before the Court: Count One, alleging an unconstitutional taking under the Fifth Amendment against the individual defendants in their official capacities, and Count Two, alleging Lanham Act Trademark Infringement against the individual defendants in their official capacities. *Id.*

---

[4]See VICC letter to Commissioner of Tourism Joseph Boschulte. (ECF No. 89-17.)

[5]Count One (Fifth Amendment Unconstitutional Taking), Count Two (Trademark Infringement as to the individual defendants), and Count Four (Trademark/Unfair Competition as to Government of the Virgin Islands).

VICC also filed a motion for temporary restraining order on March 29, 2022, seeking a preliminary injunction against Defendants and enjoining them from further trademark infringement until this matter could be heard on the merits. (*See generally* ECF No. 8.) VICC's motion was denied on April 1, 2022, to the extent that it sought a temporary restraining order and granted to the extent that it sought a preliminary injunction hearing. (*See* ECF No. 10.) The Court subsequently denied VICC's motion for preliminary injunction finding that VICC's marks "St. Thomas Carnival" and "Virgin Islands" were not valid or enforceable. (*See generally* ECF No. 59.)

### B. Decision by the Third Circuit

VICC appealed the Court's decision. (ECF No. 74.) On September 21, 2023, however, the Third Circuit Court of Appeals affirmed this Court's finding as a matter of law holding VICC's trademarks were not registrable because of their generic and geographically descriptive nature. *Carnival Comm. Inc. v. VI Dep't of Tourism*, No. 22-2658, 2023 U.S. App. LEXIS 25039, at *7-8 (3d Cir. Sep. 21, 2023). The Third Circuit further noted that such marks are subject to cancellation. *Id. at *6.*

### C. Instant Action

On September 9, 2022—while the TRO matter was pending appeal—VICC filed a second amended complaint adding GVI as a defendant in Count 4. (*See* ECF No. 89.) VICC asserts four causes of action: 1) unconstitutional taking under the Fifth Amendment against all defendants (Count One); 2) Lanham Act Trademark Infringement against the individual defendants, in their official capacities (Count Two); 3) Breach of fiduciary duty and misappropriation of funds and property against Halvor Hart in his individual capacity while serving as VICC Executive Director (Count Three); and 4)Lanham Act Trademark Infringement against GVI (Count Four). *Id.*

In response, Defendants asserted four counterclaims seeking:

1) Cancellation of VICC's trademarks "Virgin Islands Carnival" and "St. Thomas Carnival," based on fraudulent registration, pursuant to 15 U.S.C. §§ 1064(3) and 1119 (Counterclaim One); 2) Cancellation of the marks pursuant to 15 U.S.C. §§ 1064(3), (6), 1119 and 1127 (Counterclaim Two); 3) Declaratory judgment stating "that VICC's marks have not

become incontestable", pursuant to 28 U.S.C. § 2201 *et. seq.,* 15 U.S.C. §§ 1065 and 1064 (as applicable through section 1065) (Counterclaim Three); and 4) Declaratory judgment establishing that VICC's registered marks are not valid or protectable, and that GVI's use of the marks is not infringement pursuant to 28 U.S.C. § 2201 *et. seq.,* 15 U.S.C. §§ 1115 (a), (b) (Counterclaim Four).

In petitioning for judgment on the pleadings, Defendants argue that VICC's Trademark Infringement Claim fails as a result of the 2023 Third Circuit's decision in *Carnival Comm. Inc. v. VI Dep't of Tourism*, and that VICC's Fifth Amendment Takings Claim fails as a result of the applicable statute of limitations. Defendants ask the Court to grant all four of its counterclaims and to dismiss VICC's remaining claims. (ECF Nos. 162, 164, 165).

## II. LEGAL STANDARD

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The motion "should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

Similar to the motion to dismiss standard, when reviewing a motion for judgment on the pleadings, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

"A motion for judgment on the pleadings may be granted based on a statute-of-limitations defense if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'" *US Bank Tr. Nat'l Ass'n as Tr. for VRMTG Asset Tr. v. Tenpenny*, 659 F. Supp. 3d 62, 72 (D. Me. 2023) (quoting *LaChapelle v. Berkshire Life Ins.*, 142 F.3d 507, 509 (1st Cir. 1998); *see Robinson v. SEPTA*, 572 F. Supp. 3d 136, 152 (E.D. Pa. 2021) (granting judgment on the pleadings on statute of limitations grounds).

## III. DISCUSSION

### A. *VICC's marks are not protected under the Lanham Act.*

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 7 of 21

### 1. VICC's Trademark Infringement Claim

VICC argues that pursuant to 15 U.S.C. § 1114(b), GVI's use of VICC's registered trademarks, "Virgin Islands Carnival" and "St. Thomas Carnival"—or any variation thereof—constitutes trademark infringement and an unconstitutional taking of its property. Defendants dispute VICC's claim of rights over the marks and argue they are entitled to judgment in their favor as a matter of law as to their counterclaim for cancellation of the subject trademarks and as to VICC's claims for trademark infringement in Counts Two and Four of the Complaint.

The Lanham Act provides that:

> Any person who shall, without the consent of the registrant, reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114 (1)(b).

"The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983). To succeed on a claim of trademark infringement, the plaintiff must prove that: (1) its mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the origin of those goods or services. *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990) (citations omitted).

In its September 2023 decision, The Third Circuit affirmed this Court's determination that the use of VICC's trademarks do not meet the elements of trademark infringement, and the marks are not entitled to protection because they are generic and lack secondary meaning. *See VI Carnival Comm. Inc. v. VI Dep't of Tourism*, No. 22-2658, 2023 U.S. App. LEXIS

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 8 of 21

25039, at *8 (3d Cir. Sep. 21, 2023).[6] This ruling by the Third Circuit is dispositive of VICC's claims as alleged in Counts Two and Four.

### 2. *Defendants' Counterclaims*

Defendants petition the Court to cancel the marks at issue. In Count One, Defendants base their counterclaim for cancellation on fraudulent registration pursuant to 15 U.S.C. §§ 1064(3) and 1119. (ECF No. 95.) In Count Two of their Counterclaims, Defendants seek cancellation of the trademarks due to their generic nature pursuant to §§ 1064(3), (6), 1119 and 1127. *Id.*

Plaintiff claims that Defendants appropriated the trademarks "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" and falsely used the marks in connection with the St. Thomas Carnival event causing confusion as to the origin and source of the event and the plaintiff's associations with the event and sponsors. (ECF No. 89 ¶84.) Plaintiff insists that the marks are trademarks VICC has used "for over 50 years" and that Defendants misappropriated the registered marks, using and reproducing them or colorable imitations of the marks, without the consent of VICC. *Id.* at ¶¶ 83, 84, 103.

The Lanham Act gives district courts the power to order the cancellation of trademark registrations in "any action involving a registered mark registrations . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. "Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office and shall be

---

[6]For a trademark infringement claim to succeed, the disputed marks must be legally protectable. Marks that constitute a common descriptive name are referred to as generic. *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 191, (1985). "A generic term is the common descriptive name of a class of goods or services. A generic mark. . . cannot acquire distinctiveness. That is so because generic terms are by definition incapable of indicating source and therefore are the antithesis of trademarks." *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1362 (Fed. Cir. 2018). Without secondary meaning or "distinctiveness," a generic term can never attain trademark status. *Id.* "Secondary meaning exists when the mark 'is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services.'" *Commerce Nat'l Ins. Servs. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978)). The marks "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" are combinations of generic terms. "Carnival" is a common descriptor for a genus of festivals that occur throughout the Caribbean (and elsewhere), and the terms "St. Thomas" and "Virgin Islands" are common geographical descriptors. *See VI Carnival Comm. Inc. v. VI Dep't of Tourism*, No. 22-2658, 2023 U.S. App. LEXIS 25039, at *8 (3d Cir. Sep. 21, 2023).

controlled thereby." *Id*. See also *Hipple v. SCIX, LLC*, 778 F. App'x 119, 120 (3d Cir. 2019) ("While petitioning the USPTO is 'the primary means of securing a cancellation,' district courts can directly 'order cancellation' because of their 'concurrent power' with the USPTO.")(quoting *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992)).

"Controversy as to the validity of or interference with a registered mark must exist before a district court has the jurisdiction to grant the cancellation remedy." *E.T. Browne Drug Co. v. Cococare Prods.*, 538 F.3d 185, 189 (3d Cir. 2008) (citation omitted). Here, a controversy clearly exists as to the validity of the terms "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" as registered trademarks owned by VICC.

### a. Counterclaim One - Fraudulent Registration

Defendants seek cancellation of the USPTO registrations for the marks "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" based on fraudulent registration pursuant to 15 U.S.C. §§ 1064(3) and 1119. Defendants allege that when VICC applied for registration of the marks, it made false representations and omissions of material fact to the USPTO concerning its use of the service marks, its declaration of exclusive use, and its claims of its sole right to such exclusive use of the marks. (*See* ECF No. 95 ¶¶202-218.)  Defendants claim VICC was well aware at the time of registration that GVI was using the marks to describe and market the Carnival, and that it had "used the names 'St. Thomas Carnival', 'Virgin Islands Carnival' and variations thereof continuously in commerce for at least four decades." *Id.* at 207, 208. In its defense, VICC argues that it gave GVI permission to use the marks during that period, which it later revoked in February 2020. (ECF No. 89 ¶¶19, 24, 119.)

The Lanham Act provides that a third party may petition for cancellation of a registered trademark at any time if the mark's "registration was obtained fraudulently." 15 U.S.C. § 1064(3). To prove fraud on the USPTO,

> the claimant must establish, by clear and convincing evidence, that: (1) the defendant made a false representation regarding a material fact; (2) defendant knew that the representation was false when made; (3) defendant intended to induce the USPTO to act in reliance on the misrepresentation; (4) actual, reasonable reliance on the misrepresentation by the USPTO; and (5)

> proximately resulting damages. All this must be proven to the hilt and any doubt must be resolved against the charging party.

*Pac-West Distrib. NV LLC v. AFAB Indus. Servs.*, 674 F. Supp. 3d 132, 135 (E.D. Pa. 2023); *accord* C*overtech Fabricating, Inc. v. TVM Bldg. Prods.*, *Inc.*, 855 F.3d 163, 167 (3d Cir. 2017) ("[A] showing. . . must be made by clear and convincing evidence that the applicant or registrant knowingly made a false, material representation with the intent to deceive the United States Patent and Trademark Office."); *Kars 4 Kids Inc. v. Am. Can!,* 8 F.4th 209 (3d Cir. 2021) ("A trademark applicant commits fraud under the Lanham Act . . . when he knowingly makes false, material representations of fact in connection with an application for a registered mark."); Gilson on Trademarks § 13.04 (2025) ("The USPTO will find that a trademark registration was obtained fraudulently if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the USPTO, in order to obtain rights to which it is not entitled. Fraud must be proved by clear and convincing evidence.") (citation altered).

To prevail, Defendants must prove by clear and convincing evidence that VICC "knowingly made false, material representations of fact and *intended* to deceive the Patent and Trademark Office." *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 419 (4th Cir. 1998) (emphasis added). Defendants argue that at the time VICC filed applications to register the marks in December 2004, VICC was "not entitled" to do so because just months earlier, a Virgin Islands Court deemed the Carnival to be a government program, and VICC operated as a "mere agent entrusted to administer the Virgin Islands Carnival."[7] (ECF No. 95 ¶¶6, 15, 209; ECF No. 95-14.) GVI contends that the decision entered on October 24, 2004, in *V.I. Carnival Comm., Inc. v. Legislature of the V.I.*, 46 V.I. 33 (2004) "resolv[ed] the relationship of the parties and their role in Virgin Islands Carnival." (ECF No. 95 ¶88.) Therefore, according to Defendants, VICC knowingly made false representations when it

---

[7] *See V.I. Carnival Comm., Inc. v. Legislature of the V.I.*, 46 V.I. 33, 43-44 (2004) ("There is no question that the Virgin Islands Carnival is a treasured national tradition rightly belonging to the people of the Virgin Islands and administered by VICC as a program of HP&R, a department of GVI. VICC has been entrusted with the activities of the annual Carnival and is supported in whole or in part by appropriations of public funds.").

applied to register for the marks, because VICC knew the court had entered a judgment that "was adverse [sic] to VICC's claims to ownership of Virgin Islands Carnival." *Id.* at ¶74.

The problem with this assertion is that the court's decision in *V.I. Carnival Committee* does not mention trademarks at all. It is not accurate to assert, as GVI argues, that the court "entered judgment resolving the issue of ownership" of the Carnival. *Id.* at ¶116. What the Court resolved in *V.I. Carnival Committee* was whether VICC as a program that received funds from the Department of Housing, Parks and Recreation ("DHP&R")— a department of GVI— could lawfully be audited by GVI. And it determined that it could.[8]

Under section 1051 of the Lanham Act, an applicant for trademark registration "is required to state under oath that to the best of his knowledge and belief no one else has the right to use the mark." *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 420 (4th Cir. 1998). "The oath is phrased in terms of a subjective belief, such that the affiant or declarant has an honestly held, good faith belief." *Id. (citations omitted).* "Subjective intent to deceive is an indispensable element of the analysis" in a fraud case and a party challenging another on the basis of fraud must be able to "point to evidence to support an inference of deceptive intent." *In re Bose Corp.*, 580 F.3d 1240, 1245-46 (Fed. Cir. 2009). It is a heavy burden of proof. *Id.* at 1243. "When drawing an inference of intent, the involved conduct,

---

[8]"Sections 8 and 9 of Act No. 6677 instituted substantive changes to 2 V.I.C. § 29 and 3 V.I.C. § 1203 by expanding the Inspector General and Legislature Post Auditor's audit authority from Government programs and operations and grant recipients' financial statements to include any recipient of funds from the Treasury of the Government of the Virgin Islands, and absent clear legislative intent to apply retroactively, must be applied prospectively. Pre July 15, 2004 2 V.I.C. § 29 conveys an implied grant of authority to the Inspector General to verify the accuracy of the submitted financial information on behalf of GVI's departments. Pre July 15, 2004 3 V.I.C. § 1203 does not allow the Inspector General to audit private citizens and entities that provide measurable goods or services in exchange for payment from funds of the Virgin Islands Treasury. However, it does permit the Inspector General to audit private citizens and entities that receive and expend public funds to administer a government program or perform an integral part of a governmental function for the benefit of GVI, its departments or the general public. Accordingly, the Court concludes that the Inspector General can audit the Virgin Islands Carnival Committee, Inc., and access, subpoena, investigate and examine any and all documents relating to the Virgin Islands Carnival, including but not limited to contributions and sponsorships solicited from the general public to underwrite Carnival, receipts and invoices of expenditures regardless of whether funded with private or public funds and contracts and payments to vendors, suppliers and performers. The Plaintiffs' request to enjoin such audit will therefore be denied." *V.I. Carnival Comm., Inc. v. Legislature of the V.I.*, 46 V.I. 33, 46 (2004).

viewed in light of all the evidence must indicate sufficient culpability to require a finding of intent to deceive." *Id.* at 1245 (citation altered).

Although VICC does not deny that it "represented to the USPTO that it was the only entity that could claim the right to exclusive use of the names to be trademarked" and that "it had exclusively and continuously used the names to be trademarked," (ECF No. 95 ¶¶117, 118), the Court does not find this to be "clear and convincing" evidence of "intent to deceive." The Court is unwilling, at this stage of the litigation, to infer fraudulent intent on the part of VICC in the absence of any direct evidence that it knowingly made any statement designed to mislead the USPTO into registering the alleged trademarks. Viewing the evidence in the light most favorable to the moving party, the Court finds VICC had an "honestly held, good faith belief" as asserted in its Complaint—notwithstanding the decision in *V.I. Carnival Committee*. Nevertheless, due to this Court's finding that VICC does *not* hold a protectable trademark right in the phrases "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" as a matter of law as a result of the Third Circuit's ruling in *Carnival Comm. Inc. v. VI Dep't of Tourism* affirming this Court's prior decision, the Court need not reach the argument of fraud.

### b. *Counterclaim Two - Generic Nature*

In their second counterclaim, Defendants seek cancellation of VICC's trademarks due to their generic nature pursuant to 15 U.S.C. §§ 1064(3), 1119 and 1127. As discussed above, the Court finds, as a matter of law, that the marks "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" are generic and unprotectable. As such, the marks are not registrable. The Lanham Act provides that a registered mark may be cancelled if it becomes generic. The Act provides in relevant part:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed . . . At any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered.

15 U.S.C. § 1064(3). Furthermore, the Supreme Court has held that "[g]eneric terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Once a registered mark is found to be generic, merely descriptive or otherwise unprotectable, the

mark should be cancelled by the Court. *See Retail Servs. v. Freebies Publ'g*, 364 F.3d 535, 548 (4th Cir. 2004) (affirming cancellation order for generic mark FREEBIES).

Due to the generic nature of the marks "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL" as established in *VI Carnival Comm. Inc. v. VI Dep't of Tourism*, 2023 U.S. App. LEXIS 25039, the Court will grant judgment in favor of Defendants and cancel the marks.

### c. *Counterclaims Three and Four - Declaratory Relief*

In addition to their petitions for cancellation of marks, Defendants petition the Court for Declaratory Judgments stating that: 1) VICC's marks have not become incontestable and; 2) VICC's registered marks are not valid or protectable, and GVI's use of the marks is not infringement.

The Court finds Defendants' petitions to be redundant, and numerous courts have used their discretion to dismiss or strike redundant counterclaims asserted under the Declaratory Judgment Act.

> Redundancy is found where there is complete identity of factual and legal issues between the complaint and the counterclaim. A counterclaim may be stricken as redundant if it merely serves to restate the controversy set forth in the complaint. Dismissal is justified in such cases on the theory that the counterclaim will become moot upon disposition of the complaint. Considering the difficulty in determining whether a declaratory judgment counterclaim is in fact redundant prior to trial, however, authorities suggest that a court should dismiss such counterclaims only when there is no doubt that they will be rendered moot by adjudication of the main action.

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*, 674 F. Supp. 2d 562, 564 (D. Del. 2009); *see, e.g., Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment is not a proper declaratory judgment and should be dismissed.") (citing *Aldens, Inc. v. Packel,* 524 F.2d 38, 51-52 (3d Cir. 1975); *McDonald's United States, LLC v. One Route 20 LLC*, Civil Action No. 22-4629, 2023 U.S. Dist. LEXIS 176762, at *3-5 (D.N.J. May 26, 2023) ("Courts have the discretion to dismiss counterclaims requesting declaratory judgment where they are redundant with the original claim.") (citation omitted); *ProCentury Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 556 (D.N.J. 2009) (explaining that when "a request for declaratory relief raises

issues already presented in the complaint and answer, a counterclaim may be stricken as redundant since a resolution of the original claim will render the request for a declaratory judgment moot").

There is no doubt that Defendants' counterclaims are rendered moot given this Court's decision to cancel the marks at issue and in light of the Third Circuit's finding that the marks are generic and unregistrable. Counts Two and Four of the Complaint allege a claim for federal trademark infringement, which the Court dismisses. Because resolution of VICC's initial infringement claim on the merits necessarily resolves Counts Three and Four of the Counterclaims, Counts Three and Four of the Counterclaims do not serve a useful purpose. They are merely duplicative and redundant of the Court's judgments on Plaintiff's infringement claims. Accordingly, the Court finds both of these counterclaims are moot.

### B. VICC's Section 1983 takings claim is barred by the statute of limitations.

#### 1. Fifth Amendment Takings

In Count One, VICC alleges a Fifth Amendment Takings claim based on, *inter alia*, trademark infringement, unlawful eviction, and the seizure of its personal property and proprietary information, including business records, historical archives, legal files and financial records. (ECF No. 89 at ¶¶53, 64.). VICC also argues that passage of Act No. 8153 by the Virgin Islands Legislature constituted an unconstitutional taking.

Section 1983 of Title 42 of the United States Code provides injured parties with a federal cause of action against anyone who, acting under the color of state law, deprives them of their civil rights. 42 U.S.C. § 1983. The Takings Clause of the Fifth Amendment to the United States Constitution provides that government shall not take private property "for public use without just compensation" and "applies to state and local governments through the Fourteenth Amendment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (citation omitted). To state a Section 1983 Takings Clause claim, a plaintiff must plausibly plead an underlying violation of the Fifth Amendment Takings Clause.

To succeed on a takings claim, VICC must demonstrate that GVI's actions affected a "legally cognizable property interest" of VICC. *Nekrilov v. City of Jersey*, 45 F.4th 662, 669 (3d Cir. 2022) (citing *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017)).

Once VICC demonstrates existence of a legal cognizable property interest, the Court must then examine "whether there has been a taking of that property interest for public use and without just compensation." *Id.* (citing *In re Trustees of Conneaut Lake Park* at 525).

### a. Marks

As discussed above, VICC's marks are not protected by the Lanham Act, and therefore VICC does not have a "legal cognizable property interest" in the marks and may not exclude others from using the marks.

### b. Eviction

VICC argues that it was locked out of its headquarters by officials from the Department of Property & Procurement (ECF No. 89). VICC does not allege a legally cognizable property interest in its headquarters—such as a lease—to support a Fifth Amendment taking claim.

### c. Act No. 8153

VICC argues that Act No. 8153, which mandates that the Virgin Islands Government shall administer organization of the Division of Festivals, is an unconstitutional taking because it "empowered" the Defendants, in their official capacities, "to justify their unconstitutional taking of the Carnival Committee's business." *Id.*

While a business's assets are property, and any state taking of those assets is a deprivation, "business in the sense of *the activity of doing business or of making a profit*" is not property at all. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999). Furthermore, the government may create laws that it determines are in the public's best interest. Although a state statute that promotes important public policies can amount to a "taking," VICC fails to demonstrate a "taking" here*. See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 107, (1978) ("A state statute that substantially furthers important public policies may so frustrate distinct investment-backed expectations as to amount to a 'taking.'").

VICC fails to demonstrate how Act No. 8153 intrudes upon an interest over which VICC has exclusive dominion. If anything, the Act creates competition between the parties

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 16 of 21

despite claims of carnival ownership, as *neither* party possesses exclusivity of organizing "carnivals" or "festivals" on the island of St. Thomas.[9]

### d.   *Personal and intangible property*

VICC alleges that on January 24, 2020, Defendants seized its "personal property, proprietary information, and financial records,"—and held onto it for over three years. (ECF No. 174 at 5, 6.). Even though GVI returned most of the items in April 2023, VICC asserts that it invested substantial time and money into developing the information, data, and work product confiscated by GVI, and that the seizure amounts to an unconstitutional taking.[10] (ECF No. 89 ¶82.) In response, Defendants argue that GVI "has not taken nor seized property of the VICC" and that "the Takings Clause is not applicable." (ECF No. 95 ¶ 64.)

The Fifth Amendment requires the Government to pay just compensation when it takes personal property, just as when it takes real property. *See Horne v. Dep't of Agric.*, 576 U.S. 351, 359-60 (2015). "Real property, personal property, and intangible property may each be the subject of a takings claim." *Gen. Category Scallop Fishermen v. Sec'y of U.S. Dep't of Com.*, 720 F. Supp. 2d 564, 576 (D.N.J. 2010), *aff'd sub nom.*, 635 F.3d 106 (3d Cir. 2011). "The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment." *Coll. Sav. Bank*, 527 U.S. at 675.[11] The property of a business includes tangible and intangible assets. *1412 Spruce v. Commonwealth*, 504 Pa. 394, 400, 474 A.2d 280, 283 (1984).

---

[9]In a letter dated November 8, 2019, Joseph Boschulte, Commissioner of the V.I. Department of Tourism essentially warns VICC that Act 8153 gives the GVI exclusive authority over "carnivals" and "festivals." Referring to Title 3 V.I.C. section 339a(e), Boschulte writes "It has been brought to our attention that the Virgin Islands Carnival Committee has been making announcements that it is running and administering Carnival 2020." Boschulte informs VICC that Act 8153 is "explicit in providing that the Division of Festivals retains full authority over such carnivals" and that the "operation and management of *all* festivals and carnivals is therefore now vested in the Division of Festivals." (ECF No. 89-15, Ex. L.) (emphasis added.) The Court notes that GVI does not have authority to prevent private entities from "running" or "administering" "festivals and carnivals."

[10]VICC notes that "[a]lthough the Carnival Crowns are missing, the GVI returned the VICC's business records, personal property, proprietary information, financial records, etc." (ECF No. 174 at 5, 6.)

[11]Goodwill is defined as "a business's reputation, patronage, and other intangible assets that are considered when appraising the business, especially for purchase." Black's Law Dictionary (12th ed. 2024). Virgin Islands courts have recognized goodwill as a property interest. *See, e.g. Arvidson v. Buchar*, 71 V.I. 277, 318 (Super. Ct. 2019) ("[A] business's goodwill is a protectable, valuable interest, and parties may determine its value and

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 17 of 21

VICC has a cognizable property interest in its personal property, proprietary information, financial records, and goodwill. The seizure excluded VICC from its business records, including passwords, organizational charts, vendor contact lists, volunteer contact lists, application forms, forms for contracts, waivers, indemnity agreements, and judging criteria used for various competitions. (ECF No. 89 ¶54.) As the undisputed longtime organizer of the V.I. Carnival, VICC possessed rights in its tangible and intangible property. Defendants held on to VICC's property for over three years, in which time they were plausibly able to use it to replicate intangible assets that VICC provided as a business entity unto itself.

Defendants cite to *V.I. Carnival Comm., Inc. v. Legislature of the V.I.*, 46 V.I. 33 (2004), however, it is not clear to the Court how the case supports Defendants' argument.[12] (*See* ECF No. 95-14, Ex. D.) In the decision, the Court stated:

> VICC is an incorporated nonprofit corporation and not a department, program or operation of GVI. This court is hard press [sic] to find that VICC became a program of GVI simply by receiving monies from GVI to put on Carnival activities.

---

contract for its sale.") (citation omitted). See also *Cyganowski v. Biolitec U.S., Inc. (In re Biolitec, Inc.)*, Nos. 13-11157 (DHS), 13-01883 (DHS), 2015 Bankr. LEXIS 228, at *32 (Bankr. D.N.J. Jan. 22, 2015) ("Goodwill is an intangible asset consisting of the various qualities of a business that provide value above its value as a mere collection of assets.").

[12]In *V.I. Carnival Comm., Inc. v. Legislature of the V.I.*, the VICC sought a declaration that the Virgin Islands Legislature had no right to financial information beyond that which had been reported to it annually. It also sought a court order enjoining the Virgin Islands Inspector General from conducting a proposed audit and enjoining the legislature from compelling the committee to appear before a finance committee. 46 V.I. 33, 34 (2004). "The appellate court noted that former 2 V.I. Code Ann. § 29 conveyed an implied grant of authority to the Inspector General to verify the accuracy of the financial information submitted on behalf of the legislature's departments. The appellate court held that the former 3 V.I. Code Ann. § 1203 did not allow the Inspector General to audit private entities that provided measurable goods or services in exchange for payment from Virgin Islands Treasury funds. However, the appellate court concluded that the foregoing statute did permit the Inspector General to audit private citizens and entities that received and expended public funds to administer a government program or perform an integral part of a governmental function for the benefit of the legislature, its departments, or the general public." *Id.*

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 18 of 21

*Id.* at 43. The Court in *V.I. Carnival* essentially defines VICC as its own business entity separate from GVI. As such, this Court finds VICC has a valid claim, and based on the pleadings, the Court finds as a matter of law, VICC plausibly demonstrates an unconstitutional taking of its personal and intangible property. However, VICC's claim is barred by the applicable statute of limitations.

### 2. Statute of Limitations

Defendants argue that VICC's takings claim in Count One is barred by the two-year statute of limitations pursuant to 5 V.I.C. § 31(5)(A) applicable to personal injury claims. VICC challenges this time limitation by invoking the doctrine of continuing violation.

Section 1983 has no statute of limitations of its own. *See* 42 U.S.C. § 1983. Rather, it borrows the underlying state's statute of limitations for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citation omitted). In the Virgin Islands, the statute of limitations for personal injury actions is two years. 5 V.I.C. § 31(5)(A); *see Estate of Melendez v. Gov't of the V.I.*, No. 1:09-cv-00009, 2010 U.S. Dist. LEXIS 75663, at *5 (D.V.I. July 26, 2010) ("The Third Circuit has held that claims brought under 42 U.S.C. § 1983 in the Virgin Islands are subject to a two-year statute of limitation provided for in 5 V.I.C. § 31(5)(A), the Virgin Islands statute of limitations for personal injury claims.")(*citing to Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989)); *see also Owens v. Okure*, 488 U.S. 235, 240-41, 109 S. Ct. 573, 577 (1989) (holding that because § 1983 claims are "best characterized as personal injury actions," courts must apply the personal injury statute of limitations of the state where the injury occurred).

To determine whether VICC's claims against Defendants is time-barred by the two-year limitation period, the Court must determine when its claim began to accrue. Federal law governs the accrual of Section 1983 claims and establishes that the limitations period begins to run "from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." *Rivera v. DeJongh*, No. 2008-128, 2011 U.S. Dist. LEXIS 17840, at *5 (D.V.I. Feb. 21, 2011) *(citing Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 19 of 21

VICC commenced this action on March 28, 2022. However, all of the allegations asserted by VICC occurred more than two years prior to the commencement of this litigation.[13] Thus, on its face, VICC's takings claim is time-barred.

VICC attempts to overcome this untimeliness by invoking the continuing violation doctrine. The continuing violation doctrine is an "equitable exception to the timely filing requirement." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). VICC argues that in 2023, GVI's conduct amounted to a continuing trademark infringement when it "resumed (apparently permanently) using VICC's marks" to promote 2023 Carnival events. (ECF No. 174 at 10.) It also argues that Defendants' "continuing misappropriation of [VICC's] information, data and work product for Defendant's benefit at no cost" also qualifies as a continuing violation. (ECF No. 89 ¶81.)

VICC's arguments fail for two reasons. First, as discussed above, VICC's trademarks were not protected marks, so no violation of trademark infringement occurred. Second, the continuing violation doctrine "focuses on continuing *acts*, not *effects*. In other words, the doctrine relies on a defendant's continuing acts, not a *plaintiff's* continuing injury." *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) (citation omitted). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014). That is, "the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell*, 263 F.3d at 292 (citation omitted).

---

[13]VICC asserts a variety of dates under its takings claim, but they fall outside of the applicable statute of limitations timeframe: January 6, 2019, when the 32nd Legislature approved Act No. 8153 codified as Title 3 Section 339(a) of the Virgin Islands Code (ECF No. 89 ¶¶ 43, 44); November 2019 when VICC was allegedly locked out of its Facebook page (*Id.* at ¶52); Nov 8, 2019, upon receipt of Commissioner Boschulte's letter informing VICC that pursuant to Section 339a(g) he possessed sole authority to "maintain and control receipt and disbursement of all funds for private donations and sponsorships for all festivals" (*Id.* at ¶53); and January 24, 2020, when VICC's property was removed from its office allegedly "under the direction of one or more of the Defendants, Government officials" who "unlawfully and forcibly entered and seized the Carnival Committee's headquarters. . . ." (*Id.* at ¶54.)

The continuing violations doctrine "is not suited to cases . . . where the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Sharr v. City of Scranton*, No. 3:23-cv-00826, 2024 U.S. Dist. LEXIS 44659, at *9 (M.D. Pa. Mar. 13, 2024) (citation omitted). "In determining whether the continuing violation doctrine applies, courts must consider (1) whether the alleged violations constitute the same type of illegal conduct; (2) whether the alleged acts recurred or were merely isolated incidents; and (3) whether the act had a degree of permanence such that the plaintiff should have been aware of his rights and the duty to assert them." *Mathews v. Wash. Mut. Bank, FA*, No. 05-100, 2006 U.S. Dist. LEXIS 56738, at *29 n.16 (E.D. Pa. Aug. 14, 2006) (citation omitted); *accord Cowell,* 263 F.3d at 294.

Even if the Court assumes that there is a consistent subject matter among the acts alleged to have occurred prior to March 28, 2022, these acts did not affirmatively continue or recur on a regular basis, and that they may have caused continuing ill effects is insufficient to transform them into a continuing practice. Furthermore, VICC's takings claim for its personal property began to accrue at the latest by January 24, 2020, when it had a "complete and present cause of action" in the seizure of its property from its headquarters. (ECF No. 89 ¶ 54.) "The continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Cowell* at 295. VICC should have been aware of its rights when its personal items and proprietary business information were removed from its offices. Yet, it did not file its complaint until March 28, 2022—over two years later and just months after the applicable statute of limitations period for bringing claims under Section 1983 had expired.[14] Accordingly, VICC cannot successfully show that the pre-March 28, 2022 allegations should be deemed timely under the continuing

---

[14]VICC asserts a variety of dates under its takings claim, but they fall outside of the applicable statute of limitations timeframe: January 6, 2019, when the 32nd Legislature approved Act No. 8153 codified as Title 3 Section 339(a) of the Virgin Islands Code (ECF No. 89 ¶¶ 43, 44); November 2019 when VICC was allegedly locked out of its Facebook page (*Id.* at ¶52); Nov 8, 2019, upon receipt of Commissioner Boschulte's letter informing VICC that pursuant to Section 339a(g) he possessed sole authority to "maintain and control receipt and disbursement of all funds for private donations and sponsorships for all festivals" (*Id.* at ¶53); and January 24, 2020, when VICC's property was removed from its office allegedly "under the direction of one or more of the Defendants, Government officials" who "unlawfully and forcibly entered and seized the Carnival Committee's headquarters. . . ." (*Id*. at ¶54.)

*V.I. Carnival Committee v. Boschulte, et al.*
Case No. 3:22-cv-0019
Memorandum Opinion
Page 21 of 21

violations doctrine. The Court finds VICC's takings claims are barred by the statute of limitations.

## IV.    CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion for Judgment on the Pleadings. The service marks "ST. THOMAS CARNIVAL" and "VIRGIN ISLANDS CARNIVAL" are not legally protectable as a matter of law and Plaintiff's Fifth Amendment takings claim is barred by the statute of limitations. Accordingly, the Court will dismiss Counts One, Two, and Four of the Complaint. The Court will also grant Defendants' motion as to Counterclaim Two and cancel the registration of "VIRGIN ISLANDS CARNIVAL" and "ST. THOMAS CARNIVAL." Counts One, Three, and Four of Defendants' Counterclaims are moot.

Because all federal claims against the Government and all individuals in their official capacity are resolved in this matter, the Court will decline to exercise supplemental jurisdiction over the remaining local claim against Halvor Hart in his individual capacity (Count Three – Breach of Fiduciary Duty).

A separate Judgment consistent with the Memorandum Opinion follows.

**Dated:** March 31, 2026                    */s/ Robert A. Molloy*_____
                                          **ROBERT A. MOLLOY**
                                          **Chief Judge**